United States District Court
Southern District of Texas
**ENTERED**
December 31, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN A. CALZADO GILART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 21-2357 |
| | § | |
| SOUTHERN GLAZER'S WINE AND SPIRITS OF TEXAS, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Juan Gilart worked as a delivery driver for Southern Glazer's Wine and Spirits of Texas, LLC, from October 2018 until he was fired in April 2019. One of Gilart's coworkers complained that he had sexually harassed her. After a two-month investigation, Southern Glazer's terminated Gilart, who then filed a grievance with his union. The union declined to take legal action on Gilart's behalf, so Gilart sued Southern Glazer's, claiming that the company subjected him to a discriminatory and hostile work environment and unlawfully terminated him based on his sex. Gilart has represented himself throughout this litigation. After discovery, Southern Glazer's moved for summary judgment. (Docket Entry No. 76). Gilart has failed to respond.

Based on the pleadings, the motion, and the applicable law, the court grants the motion for summary judgment. The court finds no factual disputes material to determining that Southern Glazer's did not create a discriminatory or hostile work environment or engage in unlawful sex discrimination by terminating Gilart. Southern Glazer's is entitled to judgment as a matter of law. The reasons for this ruling are stated below.

I.    **Background**

Southern Glazer's is a wholesale distributor of spirits, beer, wine, and related products. (Goldstein Decl., Docket Entry No. 76-4 ¶¶ 3, 5). Gilart worked as a delivery driver for Southern Glazer's out of its Houston warehouse, and his duties included inspecting his equipment daily for pretrip safety, driving his assigned delivery routes, and resolving customer concerns and complaints. (*Id.* ¶ 5). When Gilart began working for Southern Glazer's, he signed a document stating that he understood his responsibility to "abide by the rules, policies, and standards set forth in the Employee Handbook," which included rules against discriminatory or harassing behavior. (*Id.*). Gilart also acknowledged receipt of the company's policy statement prohibiting harassment of employees and nonemployees and warning that harassment could result in an employee's termination. (*Id.*). That policy statement defined harassment to include: offensive remarks, comments, jokes, or verbal conduct pertaining to an individual's sex; offensive sexual remarks; and offensive physical conduct, including inappropriate touching or gesturing. (*Id.*). During his deposition, Gilart stated that he understood the harassment policy. (Gilart Dep. Tr., Docket Entry No. 76-2 at 69:4–70:13).

On February 13, 2019, Norma Gonzales, a contract delivery driver, accompanied Gilart as a "driver's helper" for the first and only time. (*Id.* at 73:21–74:13). Gonzales complained to Southern Glazer's that Gilart harassed her over the course of this shift at multiple points. According to Gonzales,[1] Gilart's harassing behavior started when Gilart complimented her looks

---

[1] A court may not consider inadmissible hearsay on a motion for summary judgment, unless the hearsay is unobjected to and probative. *Bellard v. Gautreaux*, 675 F.3d 454, 461–62 (5th Cir. 2012). Although Gilart has not objected to the inclusion of Gonzales's statements (or others) as part of the summary judgment record, the court acknowledges that Gilart is proceeding pro se and has not filed a response to the summary judgment motion. In the interest of fairness, the court will consider the issue of whether these statements constitute inadmissible hearsay. *See id.* at 461 (courts are "permitted to correct the admission of unobjected to hearsay in the interest of fairness").

In granting summary judgment, the court considers these statements for nonhearsay purposes only. That is, these statements are not proof of the truth of the matter asserted (that Gilart actually engaged in this conduct). Rather,

and expressed disbelief that she was a grandmother. (Gonzales Dep. Tr., Docket Entry No. 76-5 at 74:24–75:8). Gonzales also complained that, after unloading their delivery at the first stop, Gilart took a photo of the shipment that included her, expressing that she made the photo look better and that he would prefer to photograph her in a bikini. (*Id.* at 64:6–18).

At the next stop, Gonzales asked Gilart to help her remove the bar holding the boxes they needed to unload. (*Id.* at 98:5–22). He did not respond. (*Id.*). Instead, Gilart stood behind her, staring at her rear end, and said "I'm just amazed at what I'm looking at right now. It looks so beautiful from back here." (*Id.* at 98:25–99:2). Gilart then asked Gonzalez if she could "handle picking up big heavy stuff with fuzzy stuff around it" before groping his genital area. (*Id.* at 105:16–106:1).

Gonzales claims that during their lunch break, Gilart suggested they go into the family restroom together. (Investigation Summ., Docket Entry 76-3 at 39–40). Gonzales refused. (*Id.*). Over Gonzales's repeated objections, Gilart then brought her lunch, saying "you're going to need your energy if you're going to be with me; you know what I mean? You know what I'm talking about." (Gonzales Dep. Tr., Docket Entry No. 76-5 at 118:19–22). Again, over repeated objections, Gilart insisted that Gonzales take a bite of the food he had bought. (*Id.* at 120:9–12). Gonzalez tore off a small piece. (*Id.* at 120:13–15). Gilart responded, "No, I want to see you grab it with both hands and put it in your mouth. Can you handle it?" (*Id.* at 120:15–17).

After completing the next delivery, Gonzales removed her jacket while in the truck. (Gilart Dep. Tr., Docket Entry No. 76-2 at 98:17–19). In his deposition, Gilart admitted to telling her that she looked sexy and that she was voluptuous. (*Id.* at 98:24–99:2). The investigation summary

---

the statements are relevant to show the information that Southern Glazer's had and based its termination decision on. As explained further below, these statements show that Southern Glazer's had a legitimate, nondiscriminatory reason for terminating Gilart that was not pretextual.

found that Gilart then blew kisses in Gonzales's direction, asked for her telephone number, and said that he wanted "to see how deep [he] could go." (Investigation Summ., Docket Entry 76-3 at 40).

Gonzales phoned a fellow contract driver, Esmerelda Gonzalez, and told her she wanted to quit because Gilart made her feel so uncomfortable. (*Id.* at 42). During their phone conversation, Esmerelda Gonzalez put the conversation on speakerphone so her fellow driver, Southern Glazer's employee Jayme Greenleaf could also hear. (*Id.*). Esmerelda Gonzalez overheard Gilart telling Gonzales that she was beautiful and sexy, that he dreamed about seeing her in a bikini, and that he wanted her to put a corndog in her mouth to see if could "handle all of that." (*Id.*). She also overheard Gilart telling Gonzales that "what [his wife] don't know won't hurt her." (*Id.*).

When Gonzales arrived at work the following day, the Transportation Supervisor told her he had heard that something had happened on delivery with Gilart. Gonzales wrote a statement for the supervisor. (Gonzales Dep. Tr., Docket Entry No. 76-5 at 132:11–133:18). A week later, Gilart learned from his union steward that Gonzales made a sexual harassment claim against him. (Gilart Dep. Tr., Docket Entry No. 76-2 at 107:14–20; 108:8–15; 110:15–25). Gilart expressed surprise. (*Id.* at 111:1).

Within a week, Southern Glazer's initiated an internal investigation into Gonzales's sexual harassment claim against Gilart. (Seabrook Decl., Docket Entry No. 76-3 ¶¶ 4, 5). Southern Glazer's provided Gilart notice of the investigation and an opportunity to respond. (*Id.* ¶ 5); (Goldstein Decl., Docket Entry No. 76-4 ¶ 7). Southern Glazer's separately interviewed Gonzales and Gilart. (Seabrook Decl., Docket Entry No. 76-3 ¶ 5); (Gilart Dep. Tr., Docket Entry No. 76-2 at 114:23–115:10). Gilart admitted to the investigators that he had told Gonzales that she "had a beautiful body," but denied making other statements. (Gilart Dep. Tr., Docket Entry No. 76-2 at

117:9–14); (Investigation Summ., Docket Entry 76-3 at 43). Southern Glazer's investigators also interviewed Esmerelda Gonzalez, Greenleaf, and other employees who pointed out additional instances in which Gilart had made inappropriate comments toward female employees. (Investigation Summ., Docket Entry 76-3 at 41–43). One female employee said that Gilart called her "pretty" and that she overheard Gilart talking about the size and length of his erect genitalia to a female employee. (*Id.*). Another female employee complained about Gilart's flirtatious attention, which continued even after she told him to stop. (*Id.*).

Southern Glazer's found Gonzales to be credible. (*Id.* at 44). Esmerelda Gonzalez corroborated Gonzalez's complaints about Gilart, against Gilart's general denial. (*Id.*). Gonzalez's complaints were consistent with what Southern Glazer's found to be previous inappropriate behavior by Gilart. (*Id.*). Southern Glazer's found Gilart not credible, that his behavior during the investigation was dishonest, and that he made attempts to deflect the investigation. (*Id.*). Southern Glazer's found sufficient evidence that Gilart had engaged in the reported behavior, in violation of Southern Glazer's nondiscrimination and antiharassment policies and work rules. (*Id.*). The investigators recommended Gilart's termination. (*Id.*); (Seabrook Decl., Docket Entry No. 76-3 ¶ 6). Southern Glazer's terminated Gilart's employment that same day. (Goldstein Decl., Docket Entry No. 76-4 ¶ 9).

Gilart pursued a union grievance against Southern Glazer's, without success. The union recommended that Gilart accept a settlement offer from Southern Glazer's, but Gilart declined. (Gilart Dep. Tr., Docket Entry No. 76-2 at 133:6–16). Gilart instead filed a discrimination charge with the Equal Employment Opportunity Commission, followed by this lawsuit. Gilart's complaint alleges that discrimination on the basis of his sex led to his dismissal, that Southern Glazer's subjected him to a biased investigation, and that Southern Glazer's created a

discriminatory and hostile work environment. Gilart claims that his male sex was the main reason the two female investigators found Gonzales's allegations of sexual harassment to be substantial.

Gilart did not complain of harassment to anyone at Southern Glazer's. (Lewis Dep. Tr., Docket Entry No. 76-9 at 104:18–105:1). Gilart's union representative had not received a complaint from Gilart that he was made to work in a hostile environment. (Solis Dep. Tr., Docket Entry No. 76-6 at 51:10–52:7). According to the company's union business representative, Christopher Solis, Gilart did not take advantage of the three established ways Southern Glazer's employees could report complaints: calling the company's hotline, reporting to the union steward or filing a grievance. (*Id.*).

## II. The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the [nonmovant] bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the [nonmovant] the burden of demonstrating by competent summary judgment proof that there is [a dispute] of

material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets the Rule 56(c) burden, "the [nonmovant] must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor, *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022), but a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III. Analysis

#### A. Hostile Work Environment

"To survive summary judgment on a hostile work environment claim based on race or sex discrimination," Gilart must prove that:

> (1) [he] is a member of a protected class; (2) [he] suffered unwelcomed harassment; (3) the harassment was based on [his] membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."

*West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 286, F.3d 264, 268 (5th Cir. 2002)); *see also Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022). Southern Glazer's focuses on prongs (3), (4) and (5). (Docket Entry No. 76 at 21–23).

Assuming that Gilart is a member of a protected class and was subject to harassment, Southern Glazer's is correct that Gilart presented no evidence that such harassment occurred based on Gilart's status as a member of a protected class, failing the third prong.

As support for his hostile work environment claim, Gilart cites to an occasion on which Southern Glazer's sent him on his delivery route after he expressed concern with the brakes on his truck. (Gilart Dep. Tr., Docket Entry No. 76-2 at 164:17–167:9). After performing a pretrip inspection, Gilart informed the dispatch supervisor that his brakes failed a brake test. (*Id.*). The mechanic told Gilart to keep the truck running and the air pressure powering the brakes would work. (*Id.*). Gilart believed that Southern Glazer's sent him on the route because it did not want to delay an already late departure by getting him a different truck. (*Id.*). On his way back to the warehouse after completing deliveries, Gilart was caught in traffic on a rain-slick highway. (*Id.*). The brake system lost pressure and Gilart rear-ended the vehicle in front of him. (*Id.*). Gilart was ticketed for the accident, which a court later dismissed based on his claim that Southern Glazer's had sent him on his route with failing brakes. (*Id.*).

Gilart also alleges that his direct supervisor, Andrew Goldstein, and other supervisors addressed Gilart in a "rude way" and blocked his path on one or two occasions. (*Id.* at 176:1–178:14). During Gilart's deposition, he could not name the other individuals who engaged in this behavior, though he referred to a transportation supervisor. (*Id.* at 176:22–177:178:15). Gilart alleges that he addressed Goldstein and the other supervisors directly about their behavior, which did not reoccur. (*Id.* at 176:5–21). Gilart admitted to never filing a complaint and to being aware

that Southern Glazer's had an antiharassment policy and a protocol for reporting any harassment. (*Id*. at 65:24–66:8; 178:18-24). Gilart admitted that the incidents he addressed directly with his coworkers occurred only once. (*Id*. at 179:22–25; 182:3–23). Gilart also stated that the harassment he complained about happened "mostly after [the] incident with Norma Gonzales." (*Id*. at 179:24–180:4).

Viewed in the light most favorable to Gilart, the evidence does not support a finding that Gilart was subjected to any harassment because of his sex. Although Gilart alleged that Southern Glazer's refused to provide a different truck after he complained, (*id*. at 165:7–15), Gilart never alleged or provided any evidence that his sex played a role in the company's decision. Similarly, Gilart did not allege or provide any evidence that the harassment from his supervisors occurred because of Gilart's sex. Instead, Gilart alleges that Goldstein was "upset or whatever." (*Id*. at 176:5–9). Gilart testified that coworkers blocked his path "mostly after [the] incident with Norma Gonzalez." (*Id*. at 179:25–180:4). Based on his own testimony, Gilart fails to raise a factual dispute as to whether the alleged harassment occurred due to Gilart's "status as a member of a protected class." *Abbt*, 28 F.4th at 607.

As to the fourth prong, "[t]o affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). This assessment involves both objective and subjective considerations—evidence that a "reasonable person would find [the environment at Southern Glazer's] hostile or abusive" and that Gilart perceived the environment as hostile or abusive. *Abbt*, 28 F.4th at 607. The court considers the "totality of the circumstances, including the 'frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting reference omitted); *see also West*, 960 F.3d at 742 (no single factor is dispositive).

Southern Glazer's correctly argues that no reasonable factfinder could find that any alleged harassment was "sufficiently severe or pervasive to alter the conditions of [Gilart's] employment [and] create an abusive working environment." *Abbt*, 28 F.4th at 607. The harassment Gilart alleges did not occur frequently. *Cf. West*, 960 F.3d at 742 (the Fifth Circuit rejected a female firefighter's contention of frequent and pervasive harassment, when the incidents of alleged harassment included a subordinate throwing a bag at her, male firefighters sleeping in their underwear, male coworkers grabbing themselves at the dinner table, and the presence of adult magazines at work). Nor has Gilart pointed to evidence that could show that the harassment severe, physically threatening, or humiliating. *Cf. id.* at 742–43 (behavior alleged to be "sometimes offensive and boorish" did not give rise to a harassment claim). At worst, the alleged harassment was rude or inconvenient, far from enough for a hostile work environment claim. Gilart points to no evidence supporting an inference that these incidents "unreasonably interfere[d] with [his] work performance." *Abbt*, 28 F.4th at 607 (quoting reference omitted). Gilart states that he addressed the situation directly with the supervisors and that they never repeated the complained-of conduct. (Gilart Dep. Tr., Docket Entry No. 76-2 at 182:8–23). Gilart never alleges that any incident he labels as harassment interfered with his work performance, let alone in an unreasonable manner.

As to the final prong, Southern Glazer's also correctly argues that Gilart cannot show that Southern Glazer's knew or should have known of the alleged harassment and failed to remedy it. *Abbt*, 28 F.4th at 607; *see* (Docket Entry No. 76 at 23). Gilart must show that someone within Southern Glazer's, with the "authority to address the harassment problem" or an "affirmative duty"

to report any harassment, learned of any harassment against Gilart and failed to correct it. *Abbt*, 28 F.4th at 607 (quoting reference omitted). Gilart admits in his deposition that he never reported the incidents to anyone higher up at Southern Glazer's, despite the company requirement to do so. (Gilart Dep. Tr., Docket Entry No. 76-2 at 180:12–182:23). Even if the supervisors he complained to were in a position to address or report the harassing behavior, it did not occur again, meaning that it had been remedied or did not need further action. *See* (Docket Entry Nos 76-9 at 104:18–105:1; 76-12 at 144:15–146:2) (Gilart never notified Southern Glazer's of harassment); *see also* (Docket Entry Nos. 76-6 at 47:21–49:3; 76-8 at 138:22–139:2) (Gilart did not notify his union representation of harassment); (Gilart Dep. Tr., Docket Entry No. 76-2 at 182:3–23) (the supervisors had remedied the harassment).

Because Gilart fails to support several necessary prongs of his workplace harassment claims and fails to raise factual disputes material to these claims, summary judgment on Gilart's hostile work environment claim is granted in favor of Southern Glazer's.

**B.    Unlawful Termination**

To preclude summary judgment on his unlawful termination claim, Gilart must first make a prima facie showing and then demonstrate that the legitimate, nondiscriminatory reason Southern Glazer's provided for terminating him was pretextual. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The elements of a prima facie showing are that Gilart: (1) is a member of a protected group; (2) was qualified for his position; (3) was discharged or suffered some other adverse employment actions; and (4) was replaced by a woman or was treated less favorably than other, similarly situated, female employees. *Id.* at 556.

Southern Glazer's focuses on the fourth element, correctly arguing that Gilart cannot show that the company "replaced [him with] someone outside his protected group" or "treated [him] less favorably than other similarly situated employees outside [his] protected group." *Id.*; (Docket Entry No. 76 at 23). To survive summary judgment on this claim, Gilart must show either that Southern Glazer's replaced him with a female employee or that Southern Glazer's allowed a female employee to keep her job after an investigation found sexual harassment claims made against her to be credible.

Southern Glazer's has provided evidence showing that after it fired Gilart, it replaced him with a male employee. (Docket Entry No. 76-4 ¶ 10). Gilart provides no evidence to the contrary. Nor does Gilart provide evidence of similarly situated female employees receiving different treatment. As a matter of law, Gilart fails to make a prima facie showing of unlawful termination under Title VII.

Even if Gilart could make a prima facie showing, he does not and provide evidence that the decision to terminate his employment was pretextual. Because Southern Glazer's fired Gilart based on a female coworker's complaint of harassment and other incidents of harassment were revealed during the investigation into the complaint, "the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland,* 987 F.2d 1160, 1165 (5th Cir. 1993)). The court considers the information the employer had and whether its investigation was "unreasonable or in bad faith." *Id.* The court does not consider a plaintiff's "self-serving denial of wrongdoing." *Id.*

Southern Glazer's has produced significant evidence demonstrating that it decided to fire Gilart based on the investigation into the sexual harassment reported by Norma Gonzales. *See*

*Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021) (the defendant's burden "is one of production—not persuasion"). Southern Glazer's began investigating Gilart's behavior toward Gonzales shortly after she complained. The investigation lasted two months. Gilart was notified of the investigation and allowed to bring in individuals to speak on his behalf. A number of individuals were interviewed. An investigation report with findings of fact was drafted. Southern Glazer's has shown its good-faith belief that the investigation yielded a legitimate, nondiscriminatory reason for firing Gilart. *Cf. Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 256 (5th Cir. 2020) (terminating an employee for violating policy was legitimate and nondiscriminatory); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (violating a hospital's employment policies resulted in legitimate, nondiscriminatory termination).

Gilart neither submits nor points to evidence contradicting the company's position that it reasonably believed the allegations against him and acted in good faith when it terminated his employment. *See Waggoner*, 987 F.2d at 1165. Because Gilart fails to submit or point to evidence creating a factual dispute material to whether the company had a good-faith reason for terminating his employment, Gilart cannot show the final step in the *McDonnell Douglas* burden-shifting framework. 411 U.S. at 802.

IV.   **Conclusion**

The present record provides no basis for Gilart's claims of a hostile work environment or wrongful termination. Southern Glazer's is entitled to judgment as a matter of law. Its motion for summary judgment is granted. (Docket Entry No. 76).

Final judgment will be entered separately. Because Gilart is representing himself, no fees are awarded. All other outstanding motions, (Docket Entry Nos. 71, 75, 78, 79), are denied as moot.

SIGNED on December 31, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge